# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RICO PAUL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19-cv-1851-DDN |
| ) | |
| C.O. UNKNOWN TEDDFORD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Rico Paul, a prisoner who is currently incarcerated at the Jefferson City Correctional Center (JCCC), for leave to commence this civil action without prepayment of the required filing fee. The Court will grant the motion and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff signed the complaint on June 24, 2019, and it was filed in this Court on June 27, 2019. At that time, plaintiff was incarcerated at the Potosi Correctional Center (PCC). Along with the instant motion, plaintiff submitted a letter stating that PCC staff refused to give him a copy of his inmate account statement. In the motion, plaintiff states his brothers send him money from time to time. Therefore, plaintiff will be required to pay an initial partial filing fee of $1.00, an amount that is reasonable based upon the information before the Court. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). Any claim that plaintiff is unable to pay this amount must be supported by a copy of plaintiff's institution account statement.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial

2

experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). In assessing whether an action is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B), courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted), Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Amended Complaint

Plaintiff filed the amended complaint pursuant to 42 U.S.C. § 1983 against 13 defendants: Corrections Officers Teddford, Miller, Conrad, Campbell, Harsh, Hobbs, and Harley; Sergeant Mezo; Caseworkers Unknown Browers, Steve Francis and Unknown Eddleman; Function Unit Manager Jennifer Price; and Major Hunter. He states he sues Miller

3

and Price in their official and individual capacities. He does not specify the capacity in which he sues the remaining 11 defendants.

All of plaintiff's claims arose when he was incarcerated at PCC, and are related to a leaking ceiling. Plaintiff attached to the complaint an exhibit containing copies of the Informal Resolution Request (IRR), Grievance, and Grievance Appeal he filed related to the leak, along with copies of the responses he received. The Court will consider these materials in assessing whether this action is subject to dismissal under § 1915(e)(2)(B). *Reynolds*, 636 F.3d at 979, Fed. R. Civ. P. 10(c). Plaintiff alleges as follows.

On December 26, 2018 while plaintiff was housed in administrative segregation, the ceiling began leaking. Plaintiff told Teddford, Miller, Mezo and Conrad and asked to be moved, but they refused. Later, plaintiff had the same exchange with Campbell and Harsh, and Harsh said "it sucks to be you." The next day, plaintiff told Price, Hunter and Francis about the leak, but they ignored him. Plaintiff writes: "Let me bring to the court's attention I made them aware that those condition were inhumane living condition which is a deliberate indifference." Plaintiff also spoke to Miller, Teddford, Hobbs and Mezo. Later, Browers visited plaintiff's cell and asked him when he was scheduled to be released from segregation. Plaintiff told him on January 3, 3019, and Browers replied "Good because you don't have to suffer much longer." Plaintiff later reported the leak to Harley, who told him that was not part of his job description. On December 28, plaintiff told another officer about the leak, but she ignored him.

Plaintiff alleges the water was "mold-infested" and unsanitary, and he states he sought medical attention because he was having trouble breathing. Plaintiff alleges no additional facts about his physical condition, nor does he state he received medical treatment or allege that treatment was refused. In the section of the complaint soliciting information about plaintiff's

4

injuries, he wrote: "no physical injuries to my knowledge because I still have not been checked for mold."

Plaintiff was released from segregation on January 4, 2019 but returned on January 31st. Plaintiff states the ceiling in the dorm was leaking, but he neither alleges facts describing the living conditions nor alleges he suffered any symptoms.

Plaintiff filed an IRR, Grievance, and Grievance Appeal to complain about the leak. In response to his IRR, Eddleman, Price and the Assistant Warden wrote:

> I have reviewed and investigated your complaint. Potosi Correctional Center's fire and safety, Gary Phegley, has inspected the wings and cells. He stated "Maintenance is aware of the leaks from the Heating and Cooling System, and are working with what materials and money they have to repair. Moisture and warm air will cause the mildew. I have tested this mildew and have sent several samples to test for the toxic "Black Mold." This is mildew, not Black Mold and does not affect the respiratory system." This should resolve your IRR. Routine wing and cell cleaning will continue.

(ECF No. 1, attch. 1 at 1). Plaintiff filed a Grievance, and Warden Richard Jennings responded by explaining that testing was negative for the presence of mold and that the necessary maintenance had been completed. Plaintiff filed a Grievance Appeal, to which Deputy Division Director Jeff Norman responded by writing that Mr. Phegley had inspected the cells in plaintiff's unit and determined there was condensation collecting, and that offenders had been given towels to absorb it and a bleach solution to disinfect surfaces.

For his prayer for relief, plaintiff seeks $20,000 "for inhumane living condition deliberate indifference intentional infliction of emotional distress which was a violation of my 8th Amendment." He states he wants the prison and every offender in it checked for mold, the pipelines fixed by a professional, and all mold removed. He also wants each defendant fired.

**Discussion**

Plaintiff's claims arise under the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment on those convicted of crimes. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). "[P]unishment is cruel and unusual if it deprives inmates of the minimal civilized measures of life's necessities." *Whitnack v. Douglas Cty.*, 16 F.3d 954, 957 (8th Cir. 1994). As part of the Eighth Amendment's requirement of humane conditions of incarceration, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998); *see also Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) (stating that inmates are entitled to adequate laundry facilities, sufficient cleaning supplies, adequate clothing, and a nutritionally adequate diet). Prison officials must also take reasonable precautions to guarantee an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970).

In this case, plaintiff's allegations fail to support a claim that he was denied the minimal civilized measure of life's necessities, or that the conditions caused an excessive risk of harm to his health. His facts do not support the inference that being exposed to a leaking ceiling for approximately 9 days is akin to being denied appropriate shelter or hygiene. While plaintiff states he had trouble breathing and sought medical treatment, he alleges no facts that would permit the inference that he actually suffered adverse medical consequences that were caused by exposure to toxic mold or some other environmental condition. While plaintiff alleges he was exposed to a leaking dorm ceiling again for an unspecified period of time beginning January 31st, he alleges no facts describing the conditions or any impact on his health. In fact, nowhere in the complaint does plaintiff allege any real physical toll on his health as might occur had he been subjected to prolonged exposure to toxic mold or unsanitary conditions. "[M]ere exposure to mold, mildew and odors does not amount to 'an excessive risk to inmate health or safety' under

the Eighth Amendment." *Jordan v. Franks*, 2010 WL 4007641, at * 2 (S.D. Ga. Aug. 30, 2010); *see also Batiste v. Madison Parish Sheriff's Office*, 2007 WL 2263077 at *2-3 (W.D. La. Jun. 22, 2007) (no constitutional claim where plaintiff was exposed to mold and mildew for eight months absent some showing that he suffered actual physical harm from the exposure); *Cable v. Wa II*, 2010 WL 1486494 (D. RI Mar. 18, 2010) (collecting cases determining that conditions that amount to a general lack of cleanliness are constitutionally insignificant). Plaintiff's allegations also fail to state an Eighth Amendment claim of deliberate indifference, as they do not establish that any defendant knew of, and deliberately disregarded, and excessive risk of harm to plaintiff's health or safety. *Farmer*, 511 U.S at 827. Additionally, the exhibits attached to the complaint establish that prison officials addressed plaintiff's concerns about the leak, including performing maintenance to fix it, performing testing to determine whether toxic mold was present, and giving inmates supplies to use to control moisture and disinfect surfaces. While the conditions plaintiff describes could not be considered ideal, "the Constitution does not mandate comfortable prisons" or proscribe harsh prison conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981).

Plaintiff also alleges that Harsh, Browers, and Harley said rude things to him and/or were unprofessional. These allegations fail to state a claim of constitutional dimension. *See Burton v. Livingston*, 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (rudeness and unprofessionalism are not constitutional deprivations).

As a final matter, the Court notes that while plaintiff indicated he sues Miller and Price in their official and individual capacities, he failed to specify the capacity in which he sues Teddford, Conrad, Campbell, Harsh, Hobbs, Harley, Mezo, Browers, Francis, Eddleman, and

7

Hunter. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). The Court therefore interprets the complaint as alleging only official-capacity claims against Teddford, Conrad, Campbell, Harsh, Hobbs, Harley, Mezo, Browers, Francis, Eddleman, and Hunter.

Official-capacity suits represent another way of pleading an action against the entity of which the officer is an agent, which in this case is the Missouri Department of Corrections (MDOC). *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Therefore, plaintiff's official-capacity claims are assumed to be claims against the MDOC, a state agency, *Walker v. Mo. Dep't of Corr.*, 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing MDOC as state agency), and a "policy or custom" of the MDOC must have played a part in the alleged constitutional violations. *Graham*, 473 U.S. at 166 (quoting *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978)). Here, plaintiff does not allege that a policy or custom of the MDOC played a part in the alleged violations. The complaint therefore fails to state a claim upon which relief may be granted against Teddford, Conrad, Campbell, Harsh, Hobbs, Harley, Mezo, Browers, Francis, Eddleman, and Hunter for this reason as well, and it also fails to state official-capacity claims against Miller and Price. Even if plaintiff had properly stated official-capacity claims, to the extent he seeks relief other than prospective injunctive relief, his official-capacity claims would be barred by the Eleventh Amendment, *see 281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (citing *Ex Parte Young*, 209 U.S. 123 (1908)), and his claims for injunctive relief would be moot because he has been transferred to JCCC. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

Having thoroughly reviewed and liberally construed the complaint, the Court concludes that plaintiff's allegations fail to state a claim upon which relief may be granted against any of the named defendants. Plaintiff is clear about the claims he wishes to bring, and it is apparent that the problems with the complaint could not be cured by permitting plaintiff to file an amended pleading. The Court will therefore dismiss this action at this time pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will also deny as moot plaintiff's motion to appoint counsel and his motion titled "an Preliminary Injunction & a Temporary Restraining Order."

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (ECF No. 3) and his motion for injunctive relief (ECF No. 5) are **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 11th day of September, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE